UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REGINA CLEMMER, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) No. 06-CV-3361 |
| | ) |
| OFFICE OF THE CHIEF JUDGE | ) |
| OF CIRCUIT COURT OF COOK | ) |
| COUNTY and STATE OF ILLINOIS, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Court Judge:

Defendants, the Office of the Chief Judge of the Circuit Court of Cook County and the State of Illinois, move for summary judgment with respect to both counts of plaintiff Regina Clemmer's complaint. Clemmer alleges that the defendants, through the actions of a Cook County Circuit Court judge and Clemmer's supervisors, engaged in sex discrimination and retaliation against her in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* We grant the defendants' motion on Count I, Clemmer's sex discrimination claim, and grant in part the motion on Count II, Clemmer's retaliation claim. We deny the motion with respect to Count II as it pertains to the specific issue of Clemmer's alleged increased assignments to "TBA" status after she filed discrimination claims with the Equal Employment Opportunity Commission.

**I.      Factual Background**

*a.      Job Overview*

Clemmer has worked as an official court reporter for the Circuit Court of Cook County,

1

South Municipal Division, since 1995. (Defs' Stmt. of Facts (SOF) at ¶ 4.) Although the identity of her official employer has changed several times since she started working for the Circuit Court, she has at all times been paid by the State of Illinois, and she is currently employed by the Office of the Chief Judge of the Circuit Court of Cook County. (*Id.*) Clemmer's regular work hours are from 8:30 am to 4:30 pm, although she and the other court reporters have in practice been able to leave early (for the same base pay) after completing work at one of the branch courthouses outside of Chicago or at the discretion of their supervisors. (*Id.* at ¶¶ 8-10 and 24-26.) Clemmer is paid a base salary, but the parties both acknowledge that she is also paid by private attorneys and state and local government agencies for at least some of the transcripts she produces. (*Id.* at ¶ 10; Pl's Resp. to ¶ 10; Mem. in Supp. of Mot. to Dismiss at 2.)

b.  *Harassment and Hostile Work Environment Allegations*

Clemmer alleges that, beginning in September 2001, she was subject to unwanted advances from Judge Anthony Iosco, a judge assigned to the Circuit Court's domestic violence division from January 2001 to June 2003. (Pl's SOF at ¶¶ 80-82.) Clemmer was assigned to work as a court reporter in Judge Iosco's courtroom "approximately five to six times each month" in 2001 and 2002. (*Id.* at ¶ 79.) Clemmer alleges that Judge Iosco took the following actions and made the following comments:

- In July 2001, he said to Clemmer as she was leaving for the day, "be good when you go home tonight" (*id.* at ¶ 80);

- On or about September 28, 2001, he brushed against Clemmer's backside with his body as they were waiting in a hallway, even though the hallway was wide enough for two people to pass by one another without making contact (*id.* at ¶ 81);

- On a later date, he approached Clemmer as she was parking her car and said, "I do not usually drive, but now I know where to drive. I know where you park." (*Id.* at ¶ 83)

2

- From September 2001 to January 2002, he referred to Clemmer as "beautiful" or looking good" approximately 20-25 times (*id*. at ¶ 84);

- During the same time span, he addressed Clemmer as "honey" or "dear" approximately 10-20 times (*id.* at ¶ 85);

- On an unspecified date, he commented that Clemmer's earrings "sure look beautiful on you" (*id.* at ¶ 86);

- On or about November 19, 2001, after Clemmer arrived late to work due to bad traffic, Judge Iosco asked Clemmer if she was "frazzled" and told her "you sure look great to be frazzled." (*Id.* at ¶ 87)

- In August 2002, Judge Iosco when Clemmer was working on a different floor of the courthouse than Judge Iosco, he once stood outside the room in which she was working and stared at her. (*Id.* at ¶ 92.)

Clemmer states that she was subject to other harassing conduct, but she does not specify the conduct or the dates on which that conduct occurred.[1] She states that the alleged harassment triggered a stress-related medical condition, and that on at least one instance, she was forced to call in sick to avoid working in Judge Iosco's courtroom. (*Id*. at ¶¶ 95-96.)

In January 2002, Clemmer complained to her supervisor at the time, Lynn Mangan, about Judge Iosco's alleged conduct. (*Id.* at ¶ 105.) According to the parties' respective statements of facts, Clemmer was assigned to work in Judge Iosco's chambers on only one occasion after she complained to Mangan. (*See* Defs' Consolidated Stmt. of Undisputed Facts at ¶¶ 38-39.) Clemmer filed a charge against Judge Iosco with the Judicial Inquiry Board (JIB) in the summer of 2002. (Pl's SOF at ¶ 108.) In August 2002, she filed a formal complaint with the EEOC. (*Id.* at ¶ 112.)

---

[1.] Clemmer also alleges that Judge Iosco's clerk told her that Judge Iosco "liked" her, "wanted to be her boyfriend, and wanted to kiss her on her 'full lips.'" (*Id.* at ¶ 89.) We give no weight to this statement, since Clemmer states that she does not offer the statement for its truth (Reply Br. at 8) and it would be inadmissible hearsay even if it were offered as substantive evidence of harassment.

In November 2002, the JIB found that Clemmer's charges were unfounded, and the JIB informed Clemmer that it would not file a formal complaint against Judge Iosco on her behalf. (Defs' Stmt. of Facts ¶ 48-49.)

*c.     Retaliation Allegations*

Clemmer alleges that all of her supervisors, including Mangan, Jim Lawless (Clemmer's second-level supervisor and Mangan's direct supervisor), and Nanette Brookins, Clemmer's current supervisor, "were aware that she complained of sexual harassment." (Pl's Opp. to Summ. J. at 2.) There is a factual dispute as to the scope of Lawless' and Brookins' knowledge: defendants contend Lawless and Brookins did not know of Clemmer's EEOC complaint at any time relevant to Clemmer's retaliation claims; Clemmer contends that Lawless and Brookins at least knew that Clemmer complained of sexual harassment to the JIB, and she further disputes defendants' contention that the two supervisors did not know of the EEOC complaint. (*See* Pl's Response to Def's SOF 51.)

Clemmer states that after she filed the 2002 complaints with the JIB and EEOC, she was subject to the following acts of retaliation:

- In July 2002, after Clemmer filed her charge with the JIB, Lawless directed Mangan to reassign Clemmer to an "inconvenient" courthouse in Maywood, Illinois (Pl's SOF ¶ 117);

- In several instances – varying from once to three times per month – after 2002, Clemmer was not given any courtroom assignment and was required to stay at the central Court Reporter's Office (*id.* at ¶ 118). This is also referred to as "to be announced," or TBA, status. (*See* Def's SOF ¶¶ 57-58.)

- In 2005, the one year in which Lawless directly supervised Clemmer (Pl's Stmt. of Facts at ¶ 118), the overall number of courtrooms to which Clemmer was assigned was reduced (*id.* at ¶ 120);

- In 2005, Lawless told Clemmer that she could not continue to work at the 26th and

4

> California criminal courthouse unless she permanently switched to that location (*id.* at ¶ 121);

- After the EEOC issued Clemmer a right-to-sue letter in May 2006, Brookins falsely accused Clemmer of overcharging an attorney for a transcript (but did not discipline Clemmer) (*id.* at ¶ 122);

- On several occasions in May 2006, Brookins allowed other court reporters to leave early for the day (before 4:30 pm), but required Clemmer to stay at work until the end of her shift (*id.* at ¶ 123);

- On one specific instance, on May 30, 2006, when Brookins did not respond to Clemmer's question as to whether she could leave early, Clemmer called Lawless to ask for an explanation and he yelled at her, "You do what we tell you to do. Who do you think you are? You just sit there until (Brookins) or I tell you to leave." (*Id.* at ¶ 125); and

- After the May 30, 2006 conversation with Lawless, Brookins told Clemmer that she needed to attend a mandatory "make-up meeting" with another reporter, then told Clemmer that she "had an attitude" and "was not her friend." (*Id.* at ¶ 126).

## II.  Standard of Review

Summary judgment is proper when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED R. CIV. P. 56. A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).

Once the moving party meets this burden of production, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather "must set forth specific facts showing that there is a genuine issue [of material fact] for trial." FED.R.CIV.P. 56(e).

In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true and draw all inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

**III. Analysis**

*a.    Sex Discrimination Claims*

Defendants first move for summary judgment on Count I of the Complaint, in which Clemmer alleges that Judge Iosco sexually harassed her and created a hostile work environment. Defendants argue that we should not consider any alleged conduct that occurred before November 1, 2001. Defendants also contend that none of Clemmer's allegations, even if accepted as true, support a cognizable Title VII sex discrimination claim.

First, we will consider all of Clemmer's allegations in resolving this motion. Title VII requires that plaintiffs file EEOC charges within 300 days of the occurrence of alleged discrimination, and any pre-November 1, 2001 conduct here took place more than 300 days before Clemmer filed her August 2002 charge with the EEOC. 42 U.S.C. § 2000e-5(e). However, the "continuing violation" doctrine provides an exception where a plaintiff does not reasonably perceive a hostile work environment until subsequent acts provide the plaintiff with a clearer picture of the hostile circumstances in which he or she works. *See DeClue v. Central Illinois Light Co.*, 223 F.3d 434, 435 (7th Cir. 2000) (acknowledging hostile work environment may not be reasonably apparent to plaintiff "until the acts of harassment had, through repetition or cumulation, reached the requisite level of severity.") We accept Clemmer's contention that she did not fully appreciate the offensiveness and impact of Judge Iosco's conduct until she considered his earlier alleged acts in conjunction with subsequent events, and we consider all alleged conduct in deciding Clemmer's sex discrimination claim.

6

We find, however, that Clemmer's allegations of harassment are insufficient to support a Title VII hostile work environment claim. To make a *prima facie* showing of discrimination and survive summary judgment, Clemmer must set forth evidence sufficient to infer that: "1) she was subject to unwelcome sexual harassment; 2) the harassment was based on her sex; 3) the sexual harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment that affected seriously the psychological well-being of the plaintiff; and 4) there is a basis for employer liability." *McPherson v. City of Waukegan*, 379 F.3d 430, 437-38 (7th Cir. 2004).

Clemmer's evidence must reasonably support a conclusion that the conduct to which she was subject was "so severe or pervasive as to alter the conditions of employment." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 462-63 (7th Cir. 2002) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)). We must evaluate the hostility of Clemmer's work environment from both a subjective and an objective point of view: Clemmer must have in fact perceived her treatment to be offensive, and her treatment must have been such that "a reasonable person would have found [the work environment] hostile or abusive." *Id.* (quoting *Faragher*, 524 U.S. at 787).

Because we accept that Clemmer did find the alleged conduct offensive, we focus on the objective offensiveness of Judge Iosco's alleged behavior. In doing so, we "must consider all of the circumstances, including the frequency and severity of the conduct; whether it was threatening and/or humiliating or merely an offensive utterance; and whether the harassment unreasonably interfered with her work." *McPherson*, 379 F.3d at 438 (citing *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975-76 (7th Cir. 2004)). We are mindful that Title VII is a workplace discrimination law, not a "'general civility code' designed to purge the workplace of all boorish or even harassing

7

conduct." *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 808 (7th Cir. 2001). Accordingly, we must distinguish between that which constitutes an "unpleasant working environment" and that which creates a "hostile or deeply repugnant" workplace. *McPherson*, 379 F.3d at 438 (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995)). Clemmer points to eight types of incidents over the course of two years; only one of which – an allegation that Judge Iosco brushed against her in a hallway – involved physical contact. (Pl's SOF ¶ 81.) Clemmer states that on 20-25 occasions, Judge Iosco told her she was "beautiful," "look[ed] great," or looked "good;" at about the same frequency, he referred to her as "honey" or "dear." (*Id.* at ¶¶ 84-85.) He also told her one time that her earrings "sure look[ed] beautiful." (*Id.* at ¶ 87.) Judge Iosco commented that he knew where to park once he found where she parked (although there is no evidence he ever actually parked his car near Clemmer's) and he told her on one occasion to "be good" as she was leaving work for the day. (*Id.* at ¶ 80.) Finally, after she had filed her internal complaint against the Judge, he allegedly stared at Clemmer through the doors of a courtroom in which she was working. (*Id.* at ¶ 92.) Although this conduct, if it occurred, was regrettable and highly unprofessional, we cannot conclude that it reached the requisite level of severity or interfered with Clemmer's job performance to the extent necessary to sustain a Title VII hostile work environment claim. We grant defendants' motion for summary judgment on Count I of the complaint.

b.      *Retaliation Claim*

Next, defendants move for summary judgment on Count II of the complaint, in which Clemmer alleges that the defendants retaliated against her for filing her claims with the Judicial Inquiry Board and the EEOC. Defendants argue that: 1) Clemmer's retaliation claims should be dismissed because Clemmer did not file a retaliation claim with the EEOC, thereby failing to

exhaust her administrative remedies; and 2) Clemmer's retaliation claims substantively fail to support a Title VII claim.

Clemmer has not failed to exhaust her administrative remedies. Generally, Title VII plaintiffs must first raise their claims in an EEOC charge. Plaintiffs may not typically include claims in a civil complaint that have not been first considered by the EEOC. *See Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994). Here, Clemmer did not include her retaliation allegations in any charge she filed with the EEOC. However, as the Seventh Circuit has explained,

> It is the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case – a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII.

*McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 482 (7th Cir. 1996). Therefore, provided the alleged retaliation "arose after the charge of discrimination [has] been filed," *id.*, an exception to the exhaustion rule applies in cases where the filing of an EEOC charge is the alleged catalyst for retaliation. *Heuer v. Weil-McLain*, 203 F.3d 1021, 1023 (7th Cir. 2000). Because Clemmer alleges that defendants retaliated against her for, in part, filing EEOC charges, we find she did not need to file a separate retaliation claim with the EEOC.

With respect to the substance of Clemmer's retaliation claim, we grant in part and deny in part the motion for summary judgment. Although Clemmer has not provided any evidence tantamount to an admission by defendants that they took an adverse employment action for an illicit reason, *see Rogers v. City of Chicago*, 320 F.3d 748, 753-54 (7th Cir. 2003), she may set forth a *prima facie* retaliation case through the indirect burden-shifting framework set forth in *McDonnell*

9

*Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Clemmer may meet her *prima facie* burden under the indirect method of proof by showing that "after filing the charge only [s]he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though [s]he was performing [her] job in a satisfactory manner." *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 888 (7th Cir. 2004) (quoting *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir.2002)). "If the plaintiff provides this evidence, the defendant must then present evidence of a non-invidious reason for the adverse action. Once the defendant presents a legitimate, non-invidious reason for the adverse action, the burden shifts back to the plaintiff to prove that the defendant's reason is pretextual." *Id.* at 889 (citing *Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 728 (7th Cir.2003)). Ultimately, both the direct and indirect methods of proof "require that the plaintiff show that he or she was retaliated against after engaging in activity protected under Title VII." *Id.*

We find that most of Clemmer's allegations and supporting evidence fail as a matter of law to state a case for Title VII unlawful retaliation. Those allegations include: Clemmer's assignment to the Maywood courthouse (Pl's SOF ¶ 117); Lawless' admonition that she could only work at 26th and California if she agreed to work there permanently (*id.* at ¶ 121); Brookins' accusation that she overcharged for transcripts – which did not result in discipline (*id.* at ¶ 122); and her dispute with Brookins and Lawless regarding her supervisors' refusal to let her leave work early (*id.* at ¶¶ 123 & 125-26). These actions, taken separately or together, must be of a nature that would "dissuade[] a reasonable worker from making or supporting a charge of discrimination" to support a Title VII retaliation claim. *Burlington Northern & Santa Fe Railway Co. v. White*, 2006 WL 1698953, at *10 (June 22, 2006). The Supreme Court explained in *Burlington Northern* that "it is important to

separate significant from trivial harms. . . . An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* While we evaluate the allegations from an objective viewpoint, "context matters": if Clemmer provides evidence that explains how the impact of an otherwise trivial act could be more serious given the circumstances, we will take that evidence into account. *See Id.* at *11. For example, if Clemmer did not have access to a car and her supervisors knew she would have great difficulty driving to the Maywood courthouse, a retaliatory assignment to that courthouse would have had a greater impact than it appears to have actually had here. Except for the "TBA" status assignments discussed below, we cannot conclude that any of the alleged acts of retaliation, viewed separately or cumulatively, were significant enough to deter most individuals in Clemmer's situation from filing charges or complaints of discrimination.

With respect to Lawless' alleged decisions to impose increased "TBA" assignments to the court reporters' central office, we find that Clemmer has stated a *prima facie* retaliation case. Because defendants have failed to rebut the *prima facie* case with sufficient evidence supporting some non-discriminatory explanation for the increase in TBA assignments, this portion of Clemmer's retaliation claim survives summary judgment. *See Mattson*, 359 F.3d at 889. Given the undisputed fact that court reporters are paid an additional amount of money for court transcripts they produce, a one- or two-day reduction in courtroom assignments per month could conceivably have a material impact on Clemmer's annual compensation. (*See* Defs' SOF ¶¶ 24-26.) Defendants do not deny that Clemmer was from time-to-time assigned to TBA status (*see* Mem. in Supp. of Mot. to Dismiss at 12-13). Defendants provide no supporting schedule of assignments, time records, or any other evidence showing that other court reporters experienced an increase in TBA assignments

commensurate with Clemmer's during the time period at issue. Defendants cite only to Clemmer's deposition testimony to support their claim that "[a]ll court reporters in [Clemmer's division] are scheduled 'TBA' on a rotating basis." (Defs' SOF ¶ 60.) However, Clemmer's deposition testimony does not support this assertion. Clemmer testified that "all of the court reporters in [her] division [are] given TBA assignments," not that the assignments are distributed on a rotating or equal basis, or that other reporters' TBA assignments increased at the same rate as did Clemmer's under Lawless' supervision in 2002 and 2005. (Ex. B to Defs' SOF (Clemmer Dep.) at 144.) Clemmer's admission that Mangan scheduled TBA assignments on a rotating basis (*See* Pl's Resp. to Defs' SOF ¶ 60) does not support any conclusions regarding practices under Lawless. For purposes of summary judgment, in which we draw all reasonable inferences in Clemmer's favor, we find that the fact of the alleged TBA assignment increase under Lawless, as well as the impact of that increase on Clemmer's overall compensation, remain genuine issues of fact for trial, and we therefore deny in part the motion for summary judgment with respect to Count II.

**IV.     Conclusion**

For the reasons stated above, we grant defendants' motion for summary judgment with respect to Count I of the complaint, and we grant in part and deny in part the motion with respect to Count II.

It is so ordered.

／s／ Marvin E. Aspen
MARVIN E. ASPEN
United States District Judge

Dated: 5/9/07