**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **REGINA CLEMMER,** ) | |
| ) | |
| **Plaintiff,** ) | **Case No. 06 C 3361** |
| ) | |
| v. ) | **Magistrate Judge Morton Denlow** |
| ) | |
| **OFFICE OF THE CHIEF** ) | |
| **JUDGE and STATE OF** ) | |
| **ILLINOIS,** ) | |
| ) | |
| **Defendants.** ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Regina Clemmer ("Plaintiff") moves this Court to compel a non-party, the Illinois Judicial Inquiry Board ("JIB"), to produce, pursuant to subpoena, files maintained by the JIB. The JIB objects to the subpoena on the grounds that its files are protected by confidentiality provisions found in the Illinois Constitution and the JIB's Rules of Procedure. For the reasons set forth below, the Court denies Plaintiff's motion to compel. In addition, at the hearing on March 26, the Court denied Defendants' motion for a closed hearing on the motion to compel. The Court provides a further explanation in this opinion.

### I. PROCEDURAL HISTORY

**A.  Complaint with the JIB**

In June 2002, Plaintiff, an Official Court Reporter, filed a complaint with the JIB against Cook County Circuit Court Judge Anthony Iosco alleging sexual harassment. The JIB launched an investigation into the charges. In November 2002, the JIB found that Plaintiff's

charges were unfounded, and the JIB informed Plaintiff that it would not file a formal complaint against Judge Iosco with the Illinois Court's Commission.

**B.      Federal Lawsuit**

In August 2002, Plaintiff filed a formal complaint with the EEOC. On June 20, 2006, Plaintiff filed a two-count complaint in this Court against Defendants Office of the Chief Judge of Circuit Court of Cook County and the State of Illinois (collectively "Defendants"), alleging that Defendants engaged in sex discrimination (Count I) and retaliation (Count II) against her in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*

**1.      Judge Aspen's Decision Regarding Defendant's Motion for Summary Judgment**

On May 9, 2007, Judge Marvin E. Aspen granted Defendants' motion for summary judgment on Count I, and granted in part and denied in part the motion for summary judgment on Count II, dismissing Plaintiff's entire sex discrimination claim and most of Plaintiff's retaliation claim. However, Judge Aspen denied the motion with respect to Count II "as it pertains to the specific issue of [Plaintiff's] alleged increased assignments to 'TBA' status after she filed discrimination claims with the Equal Employment Opportunity Commission." *Clemmer v. Office of the Chief Judge of Circuit Court of Cook County,* 2007 WL 1390618 (N.D. Ill 2007).

In the beginning of his opinion, Judge Aspen expressly discussed each of the allegations in Plaintiff's retaliation claim. *Id.* at *1-*2. However, Judge Aspen did not include in this discussion Plaintiff's allegation that "[w]hen investigators from the Judicial

2

Inquiry Board came to the Office of the Official Court Reporters to interview other reporters, the manager interfered with the investigation and directed the investigators to leave the office immediately." *See* Complaint at 3; *Clemmer,* 2007 WL 1390618. When granting in part Defendants' motion for summary judgment on Count II, Judge Aspen stated that "most of Clemmer's allegations and supporting evidence fail as a matter of law to state a case for Title VII unlawful retaliation." *Clemmer,* 2007 WL 1390618 at *6. He stated that "[e]xcept for the 'TBA' status assignments discussed below, we cannot conclude that any of the alleged acts of retaliation, viewed separately or cumulatively, were significant enough to deter most individuals in Clemmer's situation from filing charges or complaints of discrimination." *Id.* Judge Aspen expressly held that the only genuine issues of material fact left for trial were "the alleged TBA assignment increase under Lawless, as well as the impact of that increase on Clemmer's overall compensation." *Id.* at *7.

### 2. Plaintiff's Motion to Reopen Limited Discovery

On December 4, 2007, Judge Aspen granted Plaintiff's motion to reopen limited discovery. Doc. No. 80. In Plaintiff's motion, she specifically requested discovery be reopened in part so that she could "obtain the names and addresses of the aforementioned JIB investigators who were allegedly obstructed in their investigation by way of a subpoena for

deposition so that they may be subpoenaed for trial."[1]  Pl. Motion to Reopen Lim. Disc., at 3, Dec. 3, 2007.

### 3. Plaintiff's Request for the Production of the JIB Investigation Records

On December 21, 2007, Plaintiff issued a subpoena requesting all of the materials from the JIB relating to its investigation into Plaintiff's sexual harassment complaint against Judge Iosco.  Specifically, Plaintiff requested these materials to (1) investigate whether James Lawless, a deputy administrator for the Office of the Official Court Reporter, obstructed the JIB's investigation; (2) identify any available evidence to impeach specific witnesses; and (3) determine whether there is sufficient evidence to support a request to file an amended complaint for the purposes of adding a hostile work environment claim.

On February 1, 2008, the JIB denied Plaintiff's request for production of these materials contending that all of this information was privileged under the Illinois Constitution and its own rule of procedure.  Specifically, Article 6, Section 15(c) of the Illinois Constitution provides that "[a]ll proceedings of the Board shall be confidential except the filing of a complaint with the Courts Commission." Ill. Const. Art. VI, § 15(c). Additionally, Rule 5(a) of the JIB's Rules of Procedure states that:

---

[1] Plaintiff also stated in her motion the following reasons for this particular request:
> In addition, for reasons unknown to Plaintiff or her undersigned counsel, Plaintiff's former attorney did not pursue in discovery one of Plaintiff's allegations, to the effect that one of her supervisors, James Lawless, retaliated against her by interfering with the investigation of the complaint she made about sexual harassment by Judge Iosco. Plaintiff has informed counsel that she received a telephone call from one of the Judicial Inquiry Board Investigators (a female) who informed her that she and the other investigator were told to leave the Office of the Official Court Reporters when they were attempting to conduct one or more interviews of persons with possible knowledge of Plaintiff's harassment complaint to the JIB.

Pl. Motion to Reopen Lim. Disc., Doc. No. 79, Dec. 3, 2007, at 2.

> The proceedings of the Board and all information and materials, written or oral, received or developed by the Board in the course of its work, insofar as such proceedings and information or materials relate to the question of whether a judge is guilty of misconduct or suffers from disability, shall be confidential and privileged as a matter of law.

Rules of Procedure of the JIB, Rule 5(a). Currently before this Court is Plaintiff's motion to compel the production of the JIB's investigation documents. The JIB filed its response under seal, and has also filed a motion for a closed hearing. Plaintiff objects to a closed hearing. Oral argument on both motions was held on March 26, 2008.

## II. DISCUSSION

**A.    Motion for a Closed Hearing**

Generally, the public has a right of access to the courts under the First Amendment. *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555 (1980). Such access has historically been granted for criminal proceedings in order to discourage "perjury, the misconduct of participants, and decisions based on secret bias or partiality," while recognizing the " nexus between openness, fairness and the perception of fairness." *Id.* at 569-70. The Seventh Circuit has held that the policy reasons granting access to criminal proceedings apply also to civil cases. *In the Matter of Continental Illinois Securities Litigation,* 732 F.2d 1302, 1308 (7th Cir. 1984).

The Supreme Court has also recognized, however, the need for reasonable regulation of this right of access to the courts, and has found the closure of a courtroom permissible where an "overriding interest [is] articulated in findings" made by the trial judge. *See*

*Richmond Newspapers,* 448 U.S. at 580-81. In order for the Court to order a closure, it must first find that there is a compelling governmental interest justifying the closure, and that the closure is a narrowly-tailored method of furthering that interest. *Press-Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 509 (1984). The Court finds no overriding interest in this case to require closure of the courtroom because the legal issues can be discussed without disclosing the particulars of the JIB investigation.

**B.      Motion to Compel**

Plaintiff concedes that the purpose behind the state evidentiary privilege is legitimate; however, she asserts this purpose does not outweigh her interest in vindicating her civil rights under Title VII. This Court disagrees.

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that parties may discover any non-privileged matter that is relevant to the subject matter in the pending action. Rule 501 of the Federal Rules of Evidence, which governs the applicability of privileges in federal courts, provides:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof, shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501. Thus, federal common law supplies the applicable rule of privilege in this Title VII case. In general, the United States Supreme Court does not favor evidentiary

privileges. *See United States v. Nixon*, 418 U.S. 683, 710 (1974) (finding that evidentiary privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth").

Although the federal common law is supreme with respect to privileged information, state law may be considered "as one of the factors in making the fact intensive determination of whether or not the asserted privilege applies." *United States v. State of Ill.*, 148 F.R.D. 587, 590 (N.D. Ill. 1993). Where state law requires certain information to be privileged, "[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981). Finally, the party asserting the privilege has the burden of establishing its existence and applicability to the case. *State of Ill.*, 148 F.R.D. at 590.

Under Rule 501 of the Federal Rules of Evidence, federal courts are authorized "to define new privileges by interpreting 'common law principles . . . in the light of reason and experience.'" *Jaffee v. Redmond*, 518 U.S. 1, 8 (1996). The Supreme Court in *Jaffee* held that for any privilege to be added to the federal common law, the privilege "must promote . . . sufficiently important interests to outweigh the need for probative evidence." *Id.* at 9-10; *See Wilstein v. San Tropai Condominium Master Ass'n, et al.,* 189 F.R.D. 371, 376 (N.D. Ill. 1999). Such an analysis must be made on a case-by-case basis, and must consider both the public and private interests that the privilege serves, the evidentiary benefit that would result if the privilege was denied, and the consensus among the states on the issue. *Jaffee,* 518 U.S.

7

at 10-13; *Wilstein,* 189 F.R.D. at 376.

The Supreme Court in *Landmark Communications, Inc.* v. *Virginia,* 435 U.S. 829 (1978) addressed the particular type of state privilege at issue in this case, and identified a number of policy considerations demonstrating the importance of maintaining confidentiality in the effective operation of state judicial disciplinary commissions. The Court recognized that confidentiality in judicial investigations:

> encourage[s] 'the willing participation of relevant witnesses by providing protection against possible retaliation or recrimination;'
>
> protect[s] judges 'from the injury which might result from publication of unexamined and unwarranted complaints;'
>
> maintain[s] confidence in the judiciary by avoiding publicity regarding groundless claims of judicial misconduct made by disgruntled litigants;
>
> facilitate[s] the commission's work by encouraging the 'voluntary' resignation or retirement of judges as to whom complaints justifying removal were under consideration since their resignation or retirement would avoid the publicity attendant upon a formal charge or hearing;
>
> and made possible the adjustment of minor complaints which might appropriately be called to the judge's attention without publicity.

*Landmark,* 380 N.E.2d at 804.

In addition, the Illinois Supreme Court has on two separate occasions found the JIB privilege regarding investigations to serve important purposes—namely, (1) protecting judges against unfavorable publicity resulting from irresponsible and unfounded charges, and (2) encouraging the participation of witnesses by providing protection against retaliation and harassment. *Owen v. Mann*, 105 Ill. 2d 525, 532-33 (Ill. 1985); *People ex rel. The Illinois*

*Judicial Inquiry Board v. Hartel,* 72 Ill. 2d 225 (1978).

Courts have declined to recognize a state evidentiary privilege when doing so would impose a substantial cost to federal substantive and procedural policy, particularly when a plaintiff would be precluded from pursuing his federal claims. *See Univ. of Penn.* v. *EEOC,* 493 U.S. 182 , 193, 202 (1990) (refusing to create a new common-law privilege protecting records relating to the peer review process in a Title VII action, finding the records should be produced in part because it was the very peer review process itself that was at issue); *Shadur,* 664 F.2d at 1059 (holding that the state privilege should not apply when the peer review records sought directly related to the allegations challenging the peer review process); *Accreditation Ass'n for Ambulatory Health Care, Inc. v. United States,* 2004 WL 783106 (N.D. Ill. 2004) (refusing to recognize the Illinois Medical Studies Act evidentiary privilege because, *inter alia*, the Government's interest in accessing the information to investigate alleged health care fraud outweighed the policy underlying the peer-review privilege); *State of Ill.*, 148 F.R.D. 587 (refusing to recognize the Illinois Medical Studies Act evidentiary privilege in a federal civil rights case because doing so would thwart the purpose of the underlying federal statute); *but see Freeman v. J.W. Fairman, Jr.,* 917 F. Supp. 586 (N.D. Ill. 1996) (recognizing the state-law privilege because there was no federal claim to which the records sought would be relevant).

Plaintiff argues that regardless of the Illinois Supreme Court's interpretation of the JIB's evidentiary privilege, federal courts are simply not obligated to recognize this privilege, and that her interests in disclosure outweigh the policy concerns of keeping the records

9

confidential. Unlike the above cases, however, Plaintiff has not been precluded from pursuing her remaining claims by not receiving these records. Although the records may be relevant to her sexual discrimination claim, that claim did not survive summary judgment, and is thus no longer in the case. It appears the only remaining parts of her retaliation claim relate to her allegations that her manager gave her increased "TBA" assignments, affecting the compensation she receives, and the allegations that her manager interfered with the JIB investigation. The JIB investigation materials in no way relate to her allegation regarding the "TBA" assignments, and thus keeping these materials confidential would not preclude Plaintiff from pursuing that federal claim.

The only other allegation that relates to these records is Plaintiff's allegation that her manager interfered with the investigation. For the purposes of this motion, the Court assumes that because Judge Aspen reopened discovery and referred the present motion to this Court, this allegation still remains in the case.[2] The investigation records may directly relate to this allegation. However, unlike *Shadur* and *University of Pennsylvania,* Plaintiff has been and still is fully capable of pursuing this claim without access to these records. Plaintiff had the opportunity to depose witnesses regarding the alleged interference, and Plaintiff still has access to such witnesses. Plaintiff can call at trial all of the witnesses that she believes the Board interviewed, and can ask them questions regarding any potential interference of the investigation.

---

[2]Certainly, if this allegation is no longer in the case, Plaintiff has no need to discover the investigation records.

In addition to gathering evidence to support this allegation, Plaintiff further argues that she needs to access these records to better assess her right to amend the complaint to add another claim. This Court does not permit such fishing expeditions, which at this late stage of the litigation, is effectively what Plaintiff would be doing.

Moreover, Plaintiff's interests in pursuing her civil claim are not as strong as would be the case if she was a criminal defendant attempting to negate her guilt. In *Hartel,* for example, the Illinois Supreme Court held that federal due process required that the confidential materials of the Board's investigation be disclosed, but only to the extent that such materials plainly negated the criminal defendant's guilt. *Hartel,* 72 Ill. 2d at 238. In *Owen,* the Court noted that the case did "not present the same constitutional concerns as *Hartel,*" as the person seeking the information was not a defendant in a criminal case, but rather was a plaintiff in a civil case. *Owen,* 105 Ill. 2d at 534. Likewise, because Plaintiff in this case is not on trial to defend her innocence, but is rather a plaintiff pursuing a civil claim, her interests in receiving access to these records are diminished.

On the other hand, in light of the factors laid out in *Jaffee* and *Landmark,* the JIB has a strong interest in keeping the investigation materials confidential in order to preserve the integrity of future investigations. The confidential nature of the JIB's investigations enables witnesses to fully participate in the investigations to ensure that effective remedies for judicial misconduct are achieved. All 50 states, as well as the Federal Government, recognize the importance of keeping these investigation records confidential, and thus have similar privileges protecting the confidentiality of judicial investigation records. *See* JIB Resp., Ex.

B; 28 U.S.C. § 360.

Plaintiff asserts that she only needs access to those investigation records that relate to her interference allegations, and thus suggests the Court conduct an *in camera* review of the materials and only allow her access to those records that are pertinent to the allegations. The Court does not find, however, that this option is a suitable alternative. The witnesses met with the JIB with the understanding that their statements would be confidential, and allowing some of those records to now be disclosed would undermine that trust placed in the investigative process. Moreover, the Supreme Court in *Jaffee* has rejected such an approach, holding that "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Jaffee,* 518 U.S. at 17. Individuals who participate in such confidential conversations "must be able to predict with some degree of certainty whether particular discussions will be protected." *Id.* at 18. "An uncertain privilege is little better than no privilege." *Id; but see Freeman,* 917 F. Supp. at 589 (where the court made a balancing determination based on its *in camera* review of the documents at issue). Thus, this Court will not create such uncertainty by protecting some records but allowing the disclosure of others. Furthermore, aside from the state privilege prohibiting the disclosure of these records, the information Plaintiff seeks might also be privileged under the traditional work product and attorney-client privileges, adding an additional expectation that such communications would remain confidential.

In light of the U.S. Supreme Court and Illinois Supreme Court holdings, the policy

considerations discussed therein, and the fact that this type of privilege is so universally recognized, this Court holds that such records should be protected from disclosure under common law principles in the light of reason and experience. *Jaffee,* 518 U.S. at 8. Accordingly, the Court adopts the state privilege allowing the JIB's investigation materials to be kept confidential, and denies Plaintiff's motion to compel.

### IV. CONCLUSION

The importance of maintaining the trust and confidential nature of the JIB investigations outweigh Plaintiff's need for the investigation records in this civil case. Therefore, for the reasons set forth in this opinion, **the Court denies Plaintiff's motion to compel and denies Defendants' motion for a closed hearing on the motion to compel. SO ORDERED THIS 8th DAY OF APRIL, 2008.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies mailed to:**

Jona Goldschmidt
Attorney at Law Jona Goldschmidt
5757 North Sheridan
Chicago, IL 60660

Counsel for Plaintiff

Colette Alexandra Walsh
Kevin R. Lovellette
Illinois Attorney General
100 W. Randolph St., Suite 13-624
Chicago, IL 60601

Counsel for Defendant

John Nicholas Gallo
Michael Christian Andolina
Sidley Austin LLP

One South Dearborn St.
Chicago, IL 60603

Counsel for Non-Party Illinois Judicial Inquiry Board