UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REGINA CLEMMER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 06 C 3361 |
| OFFICE OF THE CHIEF JUDGE OF CIRCUIT COURT OF COOK COUNTY and STATE OF ILLINOIS, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM ORDER AND OPINION**

MARVIN E. ASPEN, District Judge:

Presently before us is a Rule 59(e) motion filed by Plaintiff Regina Clemmer, asking that we reverse our December 2, 2008 grant of summary judgment in favor of the Office of the Chief Judge of the Circuit Court of Cook County ("Office") and the State of Illinois ("State") (collectively, "Defendants") and allow her claims to go to a jury. We hereby deny her motion.

**DISCUSSION**

To succeed on a Rule 59(e) motion, the moving party must present newly discovered evidence, point out an intervening change in controlling law, or clearly establish that the court committed a manifest error of law or fact. *See Caisse Nationale de Credit Agricole v. CBA Indus., Inc.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996); *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)

(internal citation omitted). Indeed, reconsideration is appropriate in very limited circumstances, such as "where (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in law . . . or (5) there has been a controlling or significant change in the facts." *BP Amoco Chem. v. Flint Hills Res., LLC*, 489 F. Supp. 2d 853, 856 (N.D. Ill. 2007); *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191-92 (7th Cir. 1990); *see Hickory Farms, Inc. v. Snackmasters, Inc.*, 509 F. Supp. 2d 716, 719 (N.D. Ill. 2007) ("Reconsideration is appropriate, generally speaking, only when the Court overlooked or misunderstood something."). Here, Plaintiff has not identified newly discovered evidence or any intervening changes in controlling law or facts. Having reviewed the pending motion, as well as the original summary judgment submissions, we perceive no misapprehension or manifest error of law or fact. Nonetheless, we briefly address a few of her concerns.

First, Plaintiff contends that in analyzing whether she presented sufficient circumstantial evidence to prove a causal connection under the direct method, we ignored the "mosaic" of circumstantial evidence from which a jury could infer causation. (Mot. ¶¶ 4-5.) Although we did not use the word "mosaic" in our opinion, we considered each piece of circumstantial evidence she presented and concluded that the evidence, even considered cumulatively, was insufficient to establish a question of fact as to causation. *See Clemmer v. Office of the Chief Judge of the Circuit Court of Cook County*, No. 66 C 3361, 2008 WL 5100859, at *7, 10 (N.D. Ill. Dec. 2, 2008). In *Phelan v. Cook County*, 463 F.3d 773 (7th Cir. 2006), a case relied upon by Plaintiff in her Response to Defendant's Motion for Summary Judgment, the Seventh Circuit

explains that there are three methods by which a plaintiff may defeat summary judgment using circumstantial evidence to create a "mosaic" of evidence: 1) demonstrating that there is "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn"; 2) presenting evidence that similarly-situated employees were treated more favorably than she was; and 3) demonstrating that her performance was satisfactory or she was qualified for a particular job, but was passed over by someone who did not have the forbidden characteristic. 463 F.3d at 781.

As explained in our prior opinion, Plaintiff cannot establish causation under the second method because the evidence actually shows that others who were not in the disfavored group were treated the same way as Plaintiff. *Clemmer*, 2008 WL 5100859, at *11-12. Moreover, the third method is inapplicable to this case because Plaintiff was not fired or passed over for a job. This leaves the first method. In our prior opinion, we considered, and rejected, any contention that the timing of the adverse action against Plaintiff was so suspicious as to raise an inference of discriminatory intent.[1] *See id.* at 10. Despite the fact that Plaintiff did not argue that there was

---

[1] Plaintiff argues in her Motion to Alter or Amend Judgment that she was entitled to an inference in her favor that her employer, and in particular Lawless or Comeaux-Brookins, learned of the EEOC's May 2006 issuance of her right-to-sue letter. (Mot. ¶ 6.) Presumably, Plaintiff wants us to draw this inference in her favor to create a causal link based on the escalation of adverse action taken against her for a three-month period after the EEOC sent the letter. As we discussed in our prior opinion, however, the EEOC's issuance of a right-to-sue letter is not a protected activity. *See Clemmer*, 2008 WL 5100859, at *10 (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 126 S. Ct. 1508, 1511 (2001); *Derosena v. Gen. Bd. of Pensions & Health Benefits of the United Methodist Church*, 560 F. Supp. 2d 652, 670 (N.D. Ill. 2008)). Therefore, even if we assumed that Lawless or Comeaux-Brookins were notified of the right-to-sue letter – despite the fact that no evidence supports such an inferences – Plaintiff would still not be able to demonstrate suspicious timing or causation.

suspicious timing in her brief, we attempted to find a causal link by considering this factor. However, the facts did not support such an inference. Moreover, there was no evidence of statements that would suggest a causal link, and there was evidence indicating that Plaintiff was not treated differently than other employees who did not complain about a protected activity. There simply was no evidence, even considering the "mosaic," as we must, from which a jury could infer that Defendants retaliated against Plaintiff because she complained of sexual harassment.

Although Plaintiff now cites to one Southern District of Indiana case that interpreted Seventh Circuit case law to suggest that summary judgment is inappropriate where "the court must consider a large number of pieces of circumstantial evidence," *Clay v. Schwan's Home Serv., Inc.*, 459 F. Supp. 2d 784, 785-86 (S.D. Ind. 2006) (citing *Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900 (7th Cir. 2006)), this is not the case here. In *Sylvester*, plaintiff presented circumstantial evidence to suggest a causal link: 1) two of the four employees who signed a letter opposing sex discrimination in the workplace were fired shortly after signing the letter – although the court noted that they were poor performers, it still questioned the timing of the events; 2) despite the fact that there were no issues with plaintiff's performance, her performance was discussed at the meeting in which the Board decided to fire the other two employees; and 3) plaintiff's employer was authorized to fire plaintiff, not because her performance suffered, but for her reaction to the firing of the other two signatories. *Id.* at 905. The Seventh Circuit concluded that this was enough evidence, albeit "barely enough," from which a "reasonable jury might conclude that [plaintiff] was being set up" and that "the accusations of sexual harassment in the letter signed by [plaintiff] were a cause of her being

fired." *Id.* at 904-05. However, *Sylvester* has been distinguished by other cases that do not have such circumstantial facts from which a jury could infer a causal link. *See Springer v. Durflinger*, 518 F.3d 479, 485 (7th Cir. 2008) ("What distinguishes this case from *Sylvester* is the nature of the circumstantial evidence: the timing, unusualness, and severity of the employer's acts in *Sylvester* combined to create a genuine issue of material fact about retaliation."); *Swisher v. Hinshaw & Culbertson*, No. 05 C 1174, 2007 WL 1655242 (C.D. Ill. June 6, 2007) ("If indeed the plaintiff's claim in *Sylvester* was 'maybe barely enough,' then because of the temporal gap in the instant case, Plaintiff's retaliation claim falls well short.").

Like *Springer*, this case is distinguishable from *Sylvester* based on the nature of the circumstantial evidence. As discussed in detail in our prior opinion, there is no evidence of suspicious timing. Additionally, the evidence was not particularly unusual and the Defendants' actions were not severe, as compared to the termination of the plaintiff in *Sylvester*. Accordingly, Plaintiff did not demonstrate a causal link as required under the direct method.

Second, Plaintiff, for the first time, asks us to create a new legal standard for the indirect method of proving retaliation. (Mot. ¶¶ 11-12.) As an initial matter, we agree with the Defendants' contention that arguments that could have been raised below, but were not, are disfavored in Rule 59(e) motions.[2] *See County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 819 (7th Cir. 2006) ("[A] Rule 59(e) motion 'is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment.'") (quoting *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1266, 1267 (7th Cir. 1995)); *Caisse*

---

[2] Because Plaintiff did not file a Reply to Defendants' Response, she did not present any reasons, and we could not identify any, convincing us to consider this new legal argument at this stage in the litigation.

*National de Credit Agricole*, 90 F.3d at 1270 ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion."). Moreover, even if Plaintiff had included this argument in her prior briefs, we would not be inclined to create a new standard, particularly one as convoluted as that proposed by Plaintiff.[3]

Third, Plaintiff incomprehensibly argues that we gave "short-shrift consideration to [her] cross-motion for summary judgment," and that Defendants' failure to investigate constituted a material adverse action sufficient to establish that they retaliated against her. (Mot. ¶¶ 13-18.) Although Plaintiff argued the wrong standard for her cross-motion (*see* Pl.'s Cross-Motion at 9 (citing the standard for a hostile work environment sexual harassment claim)), we attempted to

---

[3] Furthermore, because Plaintiff did not satisfy the causation requirement under either the direct or indirect methods, we do not need to analyze Plaintiff's contention that we disregarded inferences that should have been drawn in her favor – such as the question of whether there was another position available after her initial transfer request was denied (Mot. ¶ 6) – and ignored evidence – such as the affidavits of three of Plaintiff's co-workers (Mot. ¶ 8.) First, we clearly considered the affidavits of Plaintiff's co-workers, as we cited them in our opinion. *See Clemmer*, 2008 WL 5100859, at *3. To the extent that we may not have given the evidence its appropriate weight, the evidence at question would only have demonstrated material adverse action, not causation. Moreover, although the three affidavits at question may support Plaintiff's contention that she suffered from materially adverse action, they raise even more doubt to the issue of causation. The three affiants claim that they would be deterred from submitting complaints about harassment not simply because of any retaliatory acts they may have seen taken against Plaintiff, but because the workplace itself was generally hostile and they were already being treated unfairly due to their "disfavored" status. (*See* Pl.'s SOF, Ex. B, Carter Aff. ¶¶ 6, 9, 16 ("It was common knowledge that [Lawless] used assignment schedules to reward those in the favored group, and punish those in the disfavored group."); *id.* Ex. C, Frank Aff. ¶¶ 5, 6, 12 ("[Comeaux-Brookins'] practice . . . has been to use our court room reporting schedules as a weapon to punish those of us whom she does not like, and to reward those in the favored group."); *id.* Ex. D, Washington Aff. ¶¶ 5, 7-9, 14 ("[Certain supervisors have used reporting assignment schedules to reward favored employees and punish disfavored employees.").) The fact that other employees who had not filed complaints under Title VII were treated in the same manner as Plaintiff, as these affidavits indicate, undermines any potential inference regarding causation.

fit her claim into the correct standard for retaliation by, *sua sponte*, analyzing whether the Defendants' alleged failure to investigate Plaintiff's claim constituted a materially adverse action. *Clemmer*, 2008 WL 5100859, at *13-15 (explaining that "the elements that Plaintiff cites for her alleged retaliation via failure to investigate claim are the elements for a sexual harassment claim," but explaining that a claim that the employer retaliated against the plaintiff by creating a hostile work environment must meet the same elements as any other retaliation claim). In her Motion to Alter or Amend the Judgment, Plaintiff further argues that an employer's "failure to conduct *any* investigation of a Title VII complaint is *itself* an adverse employment (in)action that is a result of protected activity, and such failure would dissuade a reasonable worker from filing a Title VII complaint." (Mot. at 7.) We considered and rejected this argument in our previous opinion. *Clemmer*, 2008 WL 5100859, at *15. We reasoned that because Defendants immediately removed Plaintiff from Judge Iosco's service, and agreed to monitor the situation, their conduct was not materially adverse. *Id.* Plaintiff has cited no authority supporting her argument that an employer's failure to investigate a Title VII claim constitutes retaliation, and we refuse to hold that Defendants' response to Plaintiff's complaints – which eliminated the allegedly sexually harassing conduct – constitutes such here.

## CONCLUSION

For the foregoing reasons, we deny Plaintiff's Motion to Alter or Amend the Judgment.

Honorable Marvin E. Aspen
United States District Judge

Date: March 23, 2009